# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**ROBERT L. DAVIS,**

     **Petitioner,**

**v.**                                 **Case No. 8:16-cv-1155-T-02SPF**

**SECRETARY, DEPARTMENT OF
CORRECTIONS,**

     **Respondent.**

_____/

## ORDER

Petitioner, a Florida prisoner, instituted this action by filing a petition for writ of habeas corpus under 28 U.S.C. § 2254. Dkt. 1. At the Court's direction, Respondent responded to Petitioner's petition (Dkt. 19) and filed relevant portions of the state court record in paper format (cited as "Resp. Ex. __") (Dkts. 21, 22). Petitioner asked for and received multiple extensions of time to file a reply. Dkts. 29, 32. The extended deadline has passed, and he has not filed a reply.[1] Thus, the matter is ripe for review. The Court has reviewed the entire record, and, upon consideration, the Court concludes that the petition is due to be denied.

---

[1] The final deadline for Petitioner to file a reply was April 10, 2017—more than two years ago. Dkt. 32.

# I.    BACKGROUND

## A.    State Court Criminal Proceedings

### 1.    Charges

On December 11, 2013, Petitioner was charged in case number 13-CF-017145 with burglary of an unoccupied structure (a second-degree felony) and grand theft (a third-degree felony).  Resp. Ex. 1.  On January 7, 2014, Petitioner was charged in case number 13-CF-18157 with another count of burglary of an unoccupied structure and another count of grand theft.  Resp. Ex. 2.[2]  Petitioner was represented in both cases by the same attorney.  Resp. Ex. 1; Resp. Ex. 2.

### 2.    February 12, 2014 Hearing

On February 12, 2014, Petitioner appeared with counsel before a state court judge for a status conference.  Resp. Ex. 3 at P118-P124.  At the beginning of the hearing, Petitioner's attorney informed the judge that the defense would like to set both of Petitioner's cases for trial.  *Id.* at P121.  The judge then asked if there had been a plea offer.  *Id.*  The lead prosecutor on the case was not present, and the prosecutor who was filling in knew only that Petitioner was at the "bottom of the guidelines" of 33.675 months and that it "look[ed]" like Petitioner was a "habitual felony offender."  *Id.*  The judge then asked Petitioner's attorney if the defense wanted a negotiation, an advisory sentence, or to set the cases for trial.  *Id.*  Petitioner's attorney again stated

---

[2] It appears that Petitioner broke into the same construction trailer on two separate occasions, resulting in two separate criminal cases.  Resp. Ex. 3 at P109-P110.

that the defense wanted to set the cases for trial.  *Id.*  At that point, the lead prosecutor on the case arrived at the hearing and said, "The offer's 25.75 months, Your Honor." *Id.* at P122.  He also told the judge that the Petitioner was a habitual felony offender. *Id.*  When the judge asked if there was any room for negotiation, the lead prosecutor said, "It's possible if there's a counter offer made with, you know, mitigation.  We'll review it."  *Id.*  Petitioner's attorney reiterated that the defense would like to set the case for trial.  *Id.*  The Clerk then set the trial for May 12, 2014.  *Id.*

3.      *Letter to Prosecutor*

In late April 2014, Petitioner sent a letter to the prosecutor.  *Id.* at P134-P136. The letter was entered on the state court docket on May 5, 2014.  *Id.* at P134.  In the letter, Petitioner attempted to engage in plea negotiations.  The letter reads, in relevant part:

> I first would like to apologize to the state for being a nuisance.  I also apologize to the people of [Hillsborough] County I have harmed directly and or indirectly . . . .  When released from prison I have a positive [attitude] and have always set out to establish employment, residency, and goals within God's will.  But after several months I was drinking and subsequ[a]ntly doing drugs.  Which has [led] to me breaking the law and being incarcerated.  I know this is not the first time you have heard a plea for assistance for an alcohol and drug addiction.  But this is a sincer[e] plea for mental health and drug addiction treatment.  For after doing (13 ½) years in D.O.C. I again find myself incarcerated [due] to mental health and drug addiction . . . .  [W]hen released from prison . . . I . . . enrolled into a faith-base[d] drug program called 'New Beginning'.  Unfortunately I was kicked out of the program for selling beer after the 3rd quarter when working concession stand voluntarily for New Begin[n]ings during Bucs games.  I still need help.

The last plea offer the State offered is 27 months D.O.C. and I appreciate a offer that gives me a chance at freedom. But if you just send me to prison I am likely to fall again. I am begging for a 2-years split sentence. One year to be served in the county jail, followed by one-year probation. For the purpose of successfully completing a drug program.

*Id.* at P134-P135 (emphasis in original).

### 4. May 8, 2014 Hearing

On May 6, 2014, the prosecution filed notices in both cases stating that it intended to seek an enhanced sentence because Petitioner was a habitual felony offender. Resp. Ex. 1 (docket entry #26); Resp. Ex. 2 (docket entry #74); Resp. Ex. 3 at P23.

On May 8, 2014, Petitioner appeared in court with his attorney. It appears that, at that point, the prosecution had made an offer that was "bottom of the guidelines" or 33.675 months in state prison. Resp. Ex. 3 at P128; *see also id.* at P130 (stating that 33.675 months is "bottom of the guidelines"). A few days earlier, the judge had given Petitioner an advisory sentence, but Petitioner did not hear the advisory sentence because it was made to counsel from the bench. Thus, at the May 8 hearing, Petitioner's attorney asked the judge to give Petitioner another advisory sentence—this time so that Petitioner could hear it. *Id.* at P128. Petitioner then asked to address the court and said (referring to himself as "Defendant"):

The Defendant wanted to resolve this case. I just wanted to inform you that the reasons that the case probably hasn't been resolved, is Defendant is requesting a split sentence. The reason why is he has a long history of mental health and . . . doing very stupid and petit crimes, and the reason

for that is he has a drug problem, and he's been requesting drug treatment for a while.

*Id.* at P129.  The judge then gave Petitioner an advisory sentence and said, "If you enter a plea to these charges, I will go to the bottom of the guidelines on it, which is 33.675 months Florida State Prison."  *Id.* at P130.  Petitioner asked if it could contain a split sentence, and the judge said, "No, it's a prison sentence . . . .  I'm not going to split based on what I heard and what I decided."  *Id.* at P131.  The court then recessed. When Petitioner returned to court later that day, his attorney told the Court, "Your Honor, after this morning, I have attempted talking to [Petitioner].  He's completely stopped speaking to me at this point.  So in the absence of him telling me he wants to accept any type offer, I would say that we're keeping it set for trial."  *Id.* at P132.

     5.     *May 12, 2014 Hearing and Guilty Plea*

On May 12, 2014, Petitioner appeared in court with his attorney on the scheduled trial date.  *Id.* at P70-P117.  Before the court could proceed with jury selection, Petitioner told the judge that he wanted to terminate his attorney.  *Id.* at P73. The judge then proceeded to hold a *Nelson*[3] hearing.  *Id.* at P74.  Among other things, Petitioner complained about his attorney's conduct at the February 12 hearing. Specifically, he complained that, after the prosecution made a "27 month offer" and indicated that there was room for negotiation, his attorney did not negotiate even

---

[3] *Nelson v. State,* 274 So. 2d 256 (Fla. 4th DCA 1973).

though he had previously "told [his] counsel that [he] was . . . interested in negotiating a plea offer" and that he "would like to resolve the case." *Id.* at P76-P77, P78. The following exchange then occurred:

> [PETITIONER]: Before I go on, I believe that her discouragement saying that I should wait until later on, that I would probably get a better offer—
>
> THE COURT: Are you saying that your lawyers advised you to wait till later to get a better offer?
>
> [PETITIONER]: That's what she said. And I believe she said that just because she didn't want me to receive that typeof offer. She . . . told me that I have a habit of wanting to get the kind of sentence I want. She told me that I have a problem of . . . wanting to get the type of sentence I want . . . . I think . . . she believes that I have a reputation of . . . wanting to go to trial until I get what I want.

*Id.* at P78-P79.

The judge then asked Petitioner's attorney for her side of the story. As to Petitioner's allegations about the February 12 hearing, she said:

> The State had provided a scoresheet to me where [Petitioner] was scoring out to a little over 24 months, and [t]he State had indicated that they would make that offer to him on that day only. The prosecutor had said that he was waiting on some more certified convictions to add to his prior record on the scoresheet which would cause his score to go up. So that is why they were offering for that day only. I conveyed that offer to [Petitioner]. He told me, he did not want to accept it. I did tell him that it was a one-day-only offer and that was his only day to accept it . . . . So that is what I told the Judge, that he wished to reject the offer; and that is when we set the case for trial.

*Id.* at P87-P88. When asked about Petitioner's claim that he had told his attorney that he wanted to resolve the case, she said:

He has told me that multiple times. However, he has not wished to accept any of the offers that were made, and I have made counteroffers on his behalf which were not accepted by the prosecutor.

*Id.* at P88. When asked if it was true that she advised him not to accept the offer and wait for a better offer, she said:

I advised that we set the case for trial since he did not want to accept the current offer. And at that time he indicated to me that he agreed and that he wanted to continue, you know, negotiating as we moved forward.

*Id.* at P88-P89.

The judge then denied Petitioner's request to discharge his counsel. As relevant here, the judge made the following "findings and observations" (*id.* at P95):

With respect to the [February 12 hearing] issue, I've done this for a long time and I can tell you when an offer is made, a lawyer conveys it to the client, which she represents she did to you. I have no reason to doubt she conveyed the offer to you. I also have no doubt that you have the right to say no, thank you very much. Which is what you did. You said you didn't want the offer and you wanted something better, which is understandable. Things didn't get better, I presume they didn't get better. But for whatever reason, at some point in time you stopped communicating with your counsel . . . . But I'll make a finding that at least with respect to what you represented to me and what she represented to me, that your counsel is doing and has done those things which any lawyer is required to do and should do, in fact, she has done them.

*Id.* at P96-P97. The judge then told Petitioner that he could represent himself, hire a different lawyer, or proceed with his current counsel. *Id.* at P97. He also noted that the court would proceed to pick a jury. *Id.* Before doing so, he asked the prosecutor if there was any current offer, and the prosecutor said that there was no offer besides pleading guilty "open to the Court." *Id.* at P97-P98. While the judge was working out

a schedule for the trial, Petitioner interrupted and said that he would like to "waive trial and resolve the case." *Id.* at P99-P100. When the judge asked if he wanted to plead open, Petitioner said, "Yes." *Id.* at P100. The judge proceeded to counsel Petitioner about the possible sentence, which could be enhanced because the prosecution had indicated its intent to show that Petitioner was a habitual felony offender. *Id.* at P100-P101. As the judge was talking to Petitioner about his options, one of Petitioner's attorneys said, "Judge, if I could. [Petitioner] asked me if [t]he State would be willing to make an offer. The State's offer at this time is 36 months, and [Petitioner] indicated he does wish to accept that. I wanted to let you know." *Id.* at P104. The judge responded, "Whatever you all agree to is fine." *Id.*

After a recess, the judge took Petitioner's plea. During the plea colloquy, Petitioner admitted that the State could prove that—on two separate occasions—he broke into a construction trailer and removed equipment, tools, and walkie-talkies. He also admitted that the State could prove that, for both break-ins, blood was found in the trailer that was a "1 in 19 quintillion" match to Petitioner's DNA. *Id.* at P109-P110. Finally, he stated that he was satisfied with the advice his counsel had given him about his current plea. *Id.* at P109. The prosecution then offered evidence showing that Petitioner was a habitual felony offender. *Id.* at P113-P114. The judge found that Petitioner was a habitual felony offender and adjudged Petitioner guilty of all counts set forth in the two criminal cases. *Id.* at P114-P115. Pursuant to the plea agreement,

he also sentenced Petitioner to concurrent terms of 36 months in Florida state prison for each of the charges in the two criminal cases with 178 days of credit for time served. *Id.* at P115.

Petitioner did not file a direct appeal. *Id.* at P2.

B.     State Postconviction Proceedings

*1.     Rule 3.850 Motion*

On September 5, 2014,[4] Petitioner filed[5] a motion for postconviction relief in state court pursuant to Florida Rule of Criminal Procedure 3.850. *Id.* at P1-P28. In the motion, Petitioner stated one ground for relief, arguing that his attorney denied him "effective assistance of counsel when she decline[d] State's twenty-seven months plea offer without obtaining consent from the Defendant where Defendant was later prejudice[d] with a longer sentence"—apparently referring to the February 12, 2014 hearing when his counsel asked for a trial date rather than accept the prosecution's plea offer of 25.75 months. *Id.* at P4.[6]

_____

[4] At approximately, the same time, Petitioner also filed a petition for writ of mandamus in which he asked for the return of property that was allegedly confiscated by the Tampa Police Department in connection with another criminal matter. Resp. Ex. 3 at P31-P34. The state postconviction court transferred that motion back to the criminal matter to which it was relevant. *Id.* at P142-P143. Because the mandamus petition is not relevant to the matter currently before the Court, the Court does not discuss it further.

[5] All filing dates for the Petitioner are based on the mailbox rule.

[6] In his motion for postconviction relief, Petitioner alleged that his counsel rejected the "27 month" offer on March 13, 2014 during a "pretrial conference." Resp. Ex. 3 at P4. A review of the dockets of Petitioner's criminal cases shows that there was no hearing or other court event on March 13, 2014. Resp. Exs. 1, 2. Moreover, the broad contours of his description of the "March 13" hearing correspond to the transcript of the February 12 hearing. Thus, it appears that Petitioner

On June 2, 2015, the state postconviction court denied Petitioner's Rule 3.850

motion without a hearing. [7] After stating the relevant standard for judging ineffective

assistance of counsel from *Strickland v. Washington*, 466 U.S. 668, 686-87 (1984), and

reciting the pertinent facts, the court reasoned as follows:

> As an initial consideration, the Court clarifies that the record reveals the
> State announced its 27-month offer during a pretrial conference held on
> February 12, 2014, and not on March 13, 2014, as alleged by Defendant.
> In any event, upon review of the record, the Court finds that the record
> refutes Defendant's claims.
>
> . . . .
>
> This Court finds that the issue raised in the instant proceeding was
> previously heard during the *Nelson* hearing and was resolved after factual
> findings were made by the trial court, which is a court of equal
> jurisdiction to this Court. In deciding the issue, the trial court found that
> counsel had conveyed the offer to Defendant and Defendant had rejected
> it. **Therefore, the Court finds that the issue raised in Defendant's
> motion has already been ruled upon and Defendant is not entitled to
> further consideration of this issue by this Court.**
>
> Nevertheless, this Court further notes that both the record and
> Defendant's motion refute his assertion that he would have accepted the
> State's offer of 27 months' prison. In particular . . . , Defendant stated at
> the hearing of May 8, 2014, that his cases were not yet resolved because
> he [was] "requesting a split sentence." This is contrary to the sworn

_____

was actually referring to the 25.75-month plea offer that was discussed at the February 12, 2014
hearing.

   [7] It appears that Petitioner also attached a "Motion to Obtain Transcripts" to his Rule 3.850
motion in which he requested a copy of the transcripts for proceedings that took place on  "March
13th, 2014, and May 8th, 2014," again apparently referring to the February 12, 2014 hearing.  Resp.
Ex. 3 at P29-P30.  The state postconviction court did not rule separately on the motion but attached
copies of transcripts of the February 12 and May 8 hearings to its order on the Rule 3.850 motion,
effectively granting the request.  In addition, in January 2015, Plaintiff filed a motion for a hearing
on his Rule 3.850 motion and his motion to obtain a transcript.  *Id.* at P48-49.  The state
postconviction court implicitly denied that motion when it denied Petitioner's Rule 3.850 motion
without a hearing on June 2, 2015.

allegations in his motion that he would have accepted the State's offer of 27 months' prison. Furthermore, attached to his motion as Exhibit F1 is a letter purportedly written by Defendant and addressed to the prosecutor, in which Defendant writes,

> The last Plea offer the State offered is 27 months D.O.C. and I appreciate a[n] offer that gives me a chance at Freedom. But if you just send me to Prison I am likely to fall again. I am begging for a 2-year split sentence. One year to be served in the county jail, followed by one-year probation. For the purpose of successfully completing a drug program.

The Court finds this same letter was filed with the Clerk of Court on May 5, 2014, and the envelope in which it was mailed was postmarked on April 24, 2014. Thus, the record refutes that Defendant wanted to accept the State's 27-month offer on February 12, 2014, as Defendant was still attempting to counteroffer with a split sentence in late April. **For all of the reasons above, Defendant is not entitled to relief on his Motion for Postconviction Relief.**

Resp. Ex. 3 at P53, P55-P56 (emphasis in original; internal citations omitted). The court attached multiple documents to the order, including transcripts of the February 12 and May 8, 2014 hearings and Petitioner's letter to the prosecutor.

2. *Other Motions*

In June 2015, Petitioner filed a motion contesting the accuracy of the transcript of the February 12, 2014 hearing that was attached to the state postconviction court's order denying his Rule 3.850 motion. *Id.* at P138-P141. Specifically, he alleged that his counsel said "I" would like to set the case for trial three times, but that the transcript said that "we" would like to set it for trial. In addition, the transcript said that the stand-in prosecutor (identified as "Ms. Papy" in the transcript) said, "Did you want to pass it for a minute and I'll talk to him"—apparently referring to the lead prosecutor,

who had just entered the courtroom—and that the judge said, "No." Petitioner disputed that Ms. Papy made the remarks attributed to her and questioned the use of "I'll" in the sentence attributed to her. He also "question[ed] the court being the person who is listed stating 'no.'" *Id.* at P139. He apparently contended that the judge directed Petitioner's counsel to "pass the case so she could advi[s]e [Petitioner] about the State's . . . plea offer." *Id.* at P140. He also filed a motion requesting a transcript of "court proceedings . . . on May 6th, 2014," apparently referring to the hearing at which the court provided an advisory sentence to counsel that Petitioner did not hear. *Id.* at P149. In addition, he filed a motion asking to have the chief judge of the court intervene in the case to investigate the accuracy of the transcript of the February 12, 2014 hearing, claiming that the "transcript was intentionally altered . . . ." *Id.* at P156. Finally, he filed a motion for enlargement of time asking for additional time to file a motion for rehearing of the court's denial of his Rule 3.850 motion. *Id.* at P157-P158.

The state postconviction court denied most of the requests made by these various motions on July 6, 2015. *Id.* at P144-P148. It found that Petitioner was not entitled to the transcript he requested because he did not having a pending motion for postconviction relief. *Id.* at P145. It also found that it lacked power to investigate or otherwise take action as to the alleged inaccuracies in the transcript of the February 12, 2014 hearing, noting, "[T]he Court finds that an original transcript certifying that an 'foregoing transcription is true and correct' was filed in the court file. As this Court

does not have any authority as to what is contained in the transcribed recordings, this Court cannot grant the relief request." *Id.* at P146 (internal citation omitted). The state postconviction court did, however, grant Petitioner additional time to file a motion for rehearing as to the denial of his Rule 3.850 motion. *Id.* at P147.

In late June 2015, Petitioner filed a motion asking the court to allow him to call Judge Wayne Timmerman—the judge presiding at the February 12, 2014 hearing—as a witness to prove, among other things, that Judge Timmerman had encouraged Petitioner's counsel to take time to advise Petitioner about the plea offer but that counsel declined to do so. *Id.* at P221-P222. He included an affidavit in which he stated that he had desired to accept the State's plea offer on February 12, 2014 without obtaining a split sentence and that his attorney never gave him a chance to accept the offer. *Id.* at P224-P225. Petitioner also filed a motion for rehearing of the denial of the Rule 3.850 motion on July 17, 2015. *Id.* at P188-P198. The state postconviction court denied the motion to call Judge Timmerman as a witness and the motion for rehearing on August 4, 2015. *Id.* at P200-P202.

3.      *Appeal*

On August 13, 2015, Petitioner appealed the order denying his Rule 3.850 motion and the order denying his motions for rehearing and to call Judge Timmerman as a witness. *Id.* at P227-P229. He did not file a brief, but he did file a document titled "Supplement Authority" on December 21, 2015. Resp. Ex. 4. Florida's Second

District Court of Appeal ("Second DCA") per curiam affirmed the lower court on March 4, 2016. Resp. Ex. 6. Mandate issued on March 31, 2016. Resp. Ex. 7.

4.    *All Writs Petition*

On April 11, 2016, Petitioner filed an "All Writs" petition in the Florida Supreme Court. Resp. Ex. 8. In the petition, he alleged that "counsel and court officers" were "bias[ed]" against him. *Id.* at 1. He then went on to explain his belief that his attorney, the trial court judges, and the Second DCA were biased against him because they learned about an incident in 2008 in which he identified members of a street gang while he was incarcerated, an action which, in his words, caused him to be "condemn[n]ed." *Id.* at 2-10; *see also* Resp. Ex. 3 at P210 ("Movant asked to be moved from [his] dorm, and told deputies he feared [to] be around street brotherhood activity. Movant did not want to harm anyone, but was asked to point those out on [photo] log who troubled him, and did. Movant . . . greatly regret pointing those few out. Movant's favorite color is red, would like to apologize to all brothers of any color."). The Florida Supreme Court dismissed the petition on April 15, 2016, because a litigant cannot use an "all writs" petition to evade the rule that the Court lacks jurisdiction to review a per curiam affirmance rendered without an opinion. Resp. Ex. 9 (citing *Grate v. State*, 750 So. 2d 625 (Fla. 1999)).

14

5. *Federal Habeas Petition*

Petitioner filed a federal petition for writ of habeas corpus in this Court on May 6, 2016.[8] Dkt. 1 at 15.[9] The petition states three grounds for relief. First, Petitioner alleges that his attorney denied him "effective assistance of counsel when she declined state's twenty-seven months offer without obtaining consent from Petitioner where Petitioner was prejudice[d] with a longer sentence." *Id.* at 5. Second, he alleges that he was "denied access to the courts pursuant to the Florida and United States Constitution" because "the state court [falsified] transcript, denied me to call witness (pr[e]siding judge) and denied me documents which would prove [the] post-conviction claim" presented in Ground One. *Id.* at 7. Third, Petitioner alleges that he was "denied right to appeal pursuant to Article V, Section 4(1)(b) of the Florida Constitution, and the 14th Amendment to the United States Constitution" and was "denied his due process right to appeal" when the "state court denied Petitioner's right to present documentary evidence to state appeals court." *Id.* at 8. Petitioner did not file a memorandum in support of his petition. Respondent filed a response in opposition, arguing that the petition should be denied. Dkt. 19. Petitioner was granted multiple extensions of time to file, but he never filed a reply. Thus, his petition is ripe for review.

---

[8] Respondent concedes that Petitioner's petitioner was timely filed, and the Court agrees. *See* Dkt. 19 at 6-7 n.4 (calculating deadline to file).

[9] Citations to this document are to the page numbers assigned when it was filed in CM/ECF.

## II.    __EVIDENTIARY HEARING__

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1060 (11th Cir. 2011) (citations omitted). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." *Id.*

Petitioner did not explicitly request an evidentiary hearing in his habeas petition or otherwise explain why an evidentiary hearing would be warranted. But, to the extent that his pro se petition can be liberally construed as a request for an evidentiary hearing, the pertinent facts of this case are fully developed in the record before the Court. Because this Court can "adequately assess [Petitioner's] claim[s] without further factual development," *Turner v. Crosby*, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## III.  LEGAL STANDARDS

### A.  AEDPA

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs a state prisoner's federal petition for habeas corpus.  *See Ledford v. Warden, Ga. Diagnostic & Classification Prison*, 818 F.3d 600, 642 (11th Cir. 2016).  Under AEDPA, federal habeas review of final state court decisions is greatly circumscribed and highly deferential.  *Id.* (citation omitted).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits.  *See Marshall v. Sec'y, Fla. Dep't of Corr.*, 828 F.3d 1277, 1285 (11th Cir. 2016).  The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. *See Harrington v. Richter*, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the "federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale.  It should then presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, ___ U.S. ___, 138 S. Ct. 1188, 1192 (2018).  The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive

alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. *Id*. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim in a federal habeas petition unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Eleventh Circuit has explained:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions . . . . The "contrary to" clause allows for relief only if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts. The "unreasonable application" clause allows for relief only if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. The Supreme Court has not yet defined § 2254(d)(2)'s precise relationship to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings by clear and convincing evidence. Whatever that precise relationship may be, a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.

*Tharpe v. Warden*, 834 F.3d 1323, 1337 (11th Cir. 2016) (internal quotations and citations omitted). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. *See Cullen v. Pinholster*, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so well understood and comprehended in existing law and was so lacking in justification that there is no possibility fairminded jurists could disagree." *Tharpe*, 834 F.3d at 1338 (internal quotation and citation omitted). This standard is "meant to be" a "difficult" one to meet. *Richter*, 562 U.S. at 102.

B.   Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. With respect to prejudice, a challenger must demonstrate

"a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693.

The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the *Strickland* test before the other." *Ward v. Hall*, 592 F.3d 1144, 1163 (11th Cir. 2010). Since both prongs of the two-part *Strickland* test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." *Id.* (citation omitted). As stated in *Strickland*: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Strickland*, 466 U.S. at 697.

The United States Supreme Court has long recognized that *Strickland*'s two-part inquiry applies to ineffective assistance of counsel claims arising out of the plea process. *See Hill v. Lockhart*, 474 U.S. 52, 57 (1985). In 2012, in companion decisions in *Missouri v. Frye*, 566 U.S. 134 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), the Supreme Court clarified that the Sixth Amendment right to the effective assistance of counsel extends specifically "to the negotiation and

consideration of plea offers that lapse or are rejected." *In re Perez*, 682 F.3d 930, 932

(11th Cir. 2012) (per curiam) (footnote omitted). In *Frye*, the petitioner was charge

with a felony. The prosecutor sent a letter to the petitioner's counsel offering a

choice of two plea bargains, including an offer to reduce the charge to a misdemeanor

in exchange for a guilty plea. *Frye*, 566 U.S. at 138-39. The petitioner's counsel did

not advise the petitioner that the offers had been made, and they expired. *Id.* at 139.

Later, the petitioner pleaded guilty to the felony with which he had been charged

without a plea agreement, and the court sentenced him to three years in prison. *Id.*

The petitioner argued that his counsel was ineffective and that, with effective

assistance of counsel, he would have accepted the earlier offer to plead guilty to a

misdemeanor (which would have limited his sentence to one year in prison) as

opposed to entering an open plea to the felony charge (which exposed him to a

maximum sentence of four years' imprisonment). *Id.* at 139, 148.

The Supreme Court held that "as a general rule, defense counsel has the duty to

communicate formal offers from the prosecution to accept a plea on terms and

conditions that may be favorable to the accused" and that "[w]hen defense counsel

allowed the offer to expire without advising the defendant or allowing him to

consider it, defense counsel did not render the effective assistance the Constitution

requires." *Id.* at 145. It also set forth the following test for showing prejudice in such

a situation:

> To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance, defendants must demonstrate a reasonable probability that they would have accepted the earlier plea offer had they been afforded effective assistance of counsel. Defendants also must demonstrate a reasonable probability the plea would have been entered without the prosecutor canceling it or the trial court refusing to accept it, if they had the authority to exercise that discretion under state law. To establish prejudice in this instance, it is necessary to show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or to a sentence of less prison time.

*Id.* at 147 (citation omitted).

In all situations, a state court's adjudication of an ineffectiveness claim is accorded great deference. "[T]he standard for judging counsel's representation is a most deferential one." *Richter*, 562 U.S. at 105. But "[e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult. The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Id.* (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (internal quotation and citation omitted).

# IV. **DISCUSSION**

At the outset, the Court notes that Petitioner's 36-month sentence (which was entered in May 2014) may have expired and that he may have been released from custody. *See, e.g.*, Dkt. 33 (notice of change of address that appears to refer to a private address).[10] This does not, however, moot Petitioner's federal habeas petition. *See, e.g.*, *Pollard v. United States*, 352 U.S. 354, 358 (1957) (finding that federal habeas petition challenging the length of a sentence was not moot even though the petitioner had already been released from prison because the "possibility of consequences collateral to the imposition of sentence is sufficiently substantial to justify our dealing with the merits"); *see also Spencer v. Kemna*, 523 U.S. 1, 9-12 (1998) (noting that the Supreme Court has presumed the effect of collateral consequences sufficient to create an Article III case or controversy in several situations, including where a convict who had already served his time challenges the length of his sentence). Thus, the Court addresses the claims raised in Petitioner's petition.

---

[10] It also appears that Petitioner was subsequently reincarcerated in the Sarasota County Jail. *See* Dkt. 36 (providing new address of P.O. Box 49588, Sarasota, FL 34320); *see also* https://www.sarasotasheriff.org/corrections/visitation_and_mail/index.php (last visited June 18, 2019) (providing mailing address for inmates that matches the address listed in Petitioner's change of address notice).

A.     Ground One

In Ground One, Petitioner alleges that his attorney was ineffective when she declined the plea offer the prosecution made on February 12, 2014 (the "February 12 Plea Offer") "without obtaining consent from Petitioner where Petitioner was prejudice[d] with a longer sentence." Dkt. 1 at 5.[11] The state postconviction court addressed this claim on the merits when it denied Petitioner's Rule 3.850 motion, and the Second DCA issued a per curiam affirmance without a written opinion. In the absence of evidence or argument that the Second DCA relied on different grounds than the lower court, the Court presumes that the Second DCA adopted the lower court's reasoning. *See Wilson*, 138 S. Ct. at 1192.

As explained above, to prevail on a claim of ineffective assistance, Petitioner must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced by that deficient performance. Because Petitioner's ineffective assistance claim was adjudicated on the merits in state court, § 2254(d) bars relitigation of the claim unless the state court's decision was (1) contrary to, or involved an unreasonable application of, clearly established federal

---

[11] Petitioner sometimes refers to the plea offer in question as being an offer for 27 months in prison (Dkt. 1 at 5) and sometimes refers to it as being an offer for 25 months in prison (*id.* at 3). Despite this, it is apparent that Petitioner is referring to the plea offer the prosecution made at the February 12, 2014 hearing, which appears to have been an offer for 25.75 months in prison. The precise length of the proposed sentence is not material here because it is undisputed that—whatever the length of the sentence proposed on February 12, 2014—it was less than the 36 months of incarceration that Petitioner ultimately received after he pleaded guilty.

law, as determined by the Supreme Court; or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1)-(2). The Court elects to address the prejudice prong first because it is dispositive.[12] *See Ward*, 592 F.3d at 1163.

To show prejudice on the kind of ineffective assistance claim asserted in Ground One, Petitioner must show: (1) a reasonable probability that he would have accepted the February 12 Plea Offer if his counsel had performed effectively; (2) a reasonable probability that the plea would have been entered without the prosecutor canceling it or the trial court refusing to accept it, if they had the authority to exercise such discretion under state law; and (3) a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or to a sentence of less prison time. *Frye*, 566 U.S. at 147. The second prong applies because, in Florida, prosecutors may withdraw a plea offer at any time before it is formally accepted by a trial judge and trial courts are not bound by any plea

---

[12] If the Court were to consider the deficient performance prong, it would also conclude that Ground One is due to be denied. Here, the state postconviction court made what amounted to a factual finding that Petitioner's attorney conveyed the February 12 Plea Offer to Petitioner and that he rejected it. Resp. Ex. 3 at 55. Petitioner has not presented clear and convincing evidence to rebut that factual finding. *See* 28 U.S.C. § 2254(e)(1). Given that Petitioner's attorney represented to the court that she conveyed the February 12 Plea Offer to Petitioner and that he rejected it, the Court also cannot say that the finding was unreasonable based on the record evidence before the state court. *See id.* § 2254(d)(2). Thus, this Court must defer to the factual finding. And, given that factual finding, the state postconviction court's rejection of Petitioner's claim of ineffective assistance of counsel was not contrary to, and did not involve an unreasonable application of, federal law as determined by the Supreme Court. *See id.* § 2254(d)(1). Thus, Ground One fails on the defective performance prong, too.

agreement.  *See Alcorn v. State*, 121 So. 3d 419, 430 (Fla. 2013) (finding that the second prong of *Frye* applies in Florida).

In his federal habeas petition, Petition makes no allegations or argument about the first and second prongs, instead focusing on the fact that the sentence he ultimately received was longer than the sentence offered in the February 12 Plea Offer.  Dkt. 1 at 5.  He does not allege in even conclusory fashion that he would have accepted the February 12 Plea Offer or that the plea would have been entered without the prosecutor canceling it or the trial court rejecting it.  Ground One is due to be denied on those grounds alone.

Moreover, the state postconviction court made a factual determination that Petitioner would not have accepted the prosecution's February 12 Plea Offer even if he had been given the chance.  Resp. Ex. 3 at 55-56.  Petitioner has not rebutted that factual finding with clear and convincing evidence as is required to overcome the presumption that a state court's factual finding was correct.  *See* 28 U.S.C. § 2254(e)(1).  He also has not argued or otherwise shown that this factual finding was unreasonable in light of the evidence before the court at the time.  *See* 28 U.S.C. § 2254(d)(2).  Indeed, the record contains evidence fairly supporting the state postconviction court's finding that Petitioner was trying to get a "split sentence" up until a few days before his May 12, 2014 trial date.  *See* Resp. Ex. 3 at 55-56 (discussing the evidence supporting that conclusion); *see also id.* at P131 (asking on

May 8, 2014, if court's advisory sentence could include a split sentence). Thus, this Court cannot find that the state postconviction court's factual finding was "objectively unreasonable" and must defer to that finding. *See, e.g.*, *Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) ("The state court's determination must be objectively unreasonable." (internal quotation and citation omitted)); *Jones v. Walker*, 540 F.3d 1277, 1288 n.5 (11th Cir. 2008) (en banc) ("Federal habeas courts generally defer to the factual findings of state courts, presuming the facts to be correct unless they are rebutted by clear and convincing evidence.").

Because Ground One cannot go forward under § 2254(d)(2), Petitioner's only path to a successful habeas claim on this ground is to proceed under § 2254(d)(1) and show that the state postconviction court's denial of his ineffective assistance of counsel claim resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." Here, the state postconviction court recognized that *Strickland* governed Petitioner's claim for ineffective assistance of counsel. Resp. Ex. 3 at 7. Petitioner also has not cited "to any decision, in which the United States Supreme Court, faced with materially indistinguishable facts, reached a decision different from the state court in this case." *Wellington v. Moore*, 314 F.3d 1256, 1260-61 (11th Cir. 2002). Thus, Petitioner cannot meet the "contrary to" test

of § 2254(d)(1).  *Id.*  He also cannot show that the state postconviction court's decision involved an "unreasonable application of clearly established federal law, as determined by the Supreme Court."  28 U.S.C. § 2254(d)(1).  To the contrary, the state postconviction court determined that Petitioner's ineffective assistance claim failed because he would not have accepted the prosecution's February 12 Plea Offer (a factual finding to which this Court must defer), a holding that is wholly in line with the prejudice standard set forth in *Frye*.  Accordingly, Petitioner is not entitled to federal habeas relief on Ground One.

B.    Grounds Two and Three

In Grounds Two and Three, Petitioner complains not about his conviction and sentence but rather about alleged flaws in the state postconviction process— specifically, that the state courts falsified "the transcript" (apparently referring to the transcript of the February 12, 2014 hearing attached to the order denying Petitioner's Rule 3.850 motion); would not allow him to call Judge Timmerman as a witness when he asked to do so after his Rule 3.850 motion had been denied; denied him some unspecified documents that would support his claim of ineffective assistance of counsel; and denied him the "right to present documentary evidence to state appeals court."  Dkt. 1 at 7-8.  He couches these complaints in terms of violations of the Florida Constitution and the federal Constitution.  *Id.*  To the extent he complains about violations of the Florida Constitution, this Court cannot provide relief because,

in conducting federal habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) (citations omitted).

As for the conclusory claims of federal constitutional violations made in Grounds Two and Three, it is clear that these are actually claims that there were defects in the state courts' collateral proceedings. But the Eleventh Circuit "has repeatedly held defects in state collateral proceedings do not provide a basis for habeas relief" because "a challenge to a state collateral proceeding does not undermine the legality of . . . the conviction itself" and because "such challenges often involve claims under state law." *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1365 (11th Cir. 2009) (citations omitted). This is true even if the federal habeas petition is couched in language implicating a federal constitutional violation. *See id.* (concluding that a state court's summary denial of a postconviction motion for an evidentiary hearing on the question of whether the petitioner was mentally retarded did not provide a claim on which a federal court could grant habeas relief even though the petition alleged that the petitioner's "due process" rights were violated by the failure to hold an evidentiary hearing).

Here, the state courts' alleged errors relate to issues of state law (including questions of evidence and discovery). Moreover, Petitioner has not explained how the errors would undermine the legality of his conviction and sentence. All of the

errors alleged in Grounds Two and Three relate to Petitioner's attempts (made after the state postconviction court had already denied his Rule 3.850 motion) to prove that his attorney did not give him the opportunity to reject the State's February 12 Plea Offer. None of them relate to the question of prejudice—that is, whether Petitioner would, in fact, have accepted the February 12 Plea Offer even if his attorney had given him the chance. And, as discussed above, without a showing of prejudice from his attorney's allegedly ineffective assistance, Petitioner cannot show that his conviction and sentence were constitutionally infirm. Accordingly, the Court concludes that Grounds Two and Three do not state cognizable claims for federal habeas relief.

## V. CONCLUSION

For the reasons stated above, the Court finds that Petitioner's petition for writ of habeas corpus (Dkt. 1) is due to be denied and, thus, dismisses this action with prejudice. The Clerk is instructed to enter judgment accordingly, terminate any pending motions, and close the file.

In addition, a certificate of appealability and leave to appeal in forma pauperis are denied. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). "A [COA] may issue. . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a showing, Petitioner "must

demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quotation omitted), or that "the issues presented were adequate to deserve encouragement to proceed further," *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotation and citation omitted). Petitioner has not made the requisite showing in these circumstances. Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Tampa, Florida, on June 18, 2019.


*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**


**COPIES FURNISHED TO:**
Counsel of Record
Petitioner, pro se